UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,           :
                                    :
          Plaintiff,                :
                                    :
     v.                             :      Case Number: 1:24CR00259-JMC
                                    :
JOHN M. DINE,                       :
                                    :
          Defendant.                :


DEFENDANT'S RESPONSE TO GOVERNMENT'S
SENTENCING MEMORANDUM

**COMES NOW** Defendant, John M. Dine, by his attorney, and respectfully requests that this Honorable Court impose a sentence in the above case based on consideration of all relevant factors contained in 18 U.S.C. §3553(a).  Furthermore, Defendant respectfully requests that this Honorable Court impose a sentence reflective of the sentencing recommendation made by the United States Probation Office. *See* Sentencing Recommendation, (ECF Doc. 15).  The sentencing recommendation endorses a one (1) year concurrent term of probation on each count as being sufficient to address the goals of sentencing.  *See* Sentencing Recommend'tion (ECF Doc. 15 at pg. 1).  The recommendation lists several mandatory and discretionary conditions of probation supervision; it also recommends that restitution be made in the amount of $500.00.  *See* Sentencing Recommend'tion, (ECF Doc. 15 at pgs. 1-4).  Defendant

1

agrees with the sentencing recommendation proposed by the United States Office of Probation in that a term of incarceration as sought by the Government is not warranted in this case.   In support, Defendant states:

### **Introduction**

John Matthew Dine entered a pleas of guilty before this Court on June 27, 2024, to the offense of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. §5104(e)(2)(G) and to the offense of Disorderly Conduct in the Capitol Building in violation of Title 40 of the United States Code, Section 5104(e)(2)(D).   The offenses were charged as Count Four (IV) and Count Three (III) of a criminal Information which the Government filed against Defendant on May 29, 2024.   *See* Information (ECF Doc. 1).   There is a written plea agreement in the case.   *See* Presentence Report (hereinafter referred to as PSR), ¶s 5-8; Plea Agrmn't (ECF Doc. 8).   The parties agree that the United States Sentencing Guidelines (U.S.S.G.) do not apply to the Defendant's sentencing.   *See* PSR, ¶71.   The Defendant agrees to pay restitution through the Clerk of the Court for the United States District Court for the District of Columbia in the amount of $500.00 as requested by the Government in the plea agreement.   *See* PSR, ¶9; Plea Agrmn't (ECF Doc. 8 at pg. 6).

Pursuant to U.S.S.G. §1B1.9, the United States Sentencing

Guidelines do not apply to any count of conviction that is a class B or C misdemeanor or an infraction.   The offenses to which Mr. Dine pled guilty are classified as Class B misdemeanors.  18 U.S.C. §3559(a)(7).   The statutory maximum jail sentence is fixed at imprisonment for not more than six (6) months.  40 U.S.C. §5109(b).

Mr. Dine is eligible for up to five (5) years of probation because the offenses are both misdemeanors.  18 U.S.C. §3561(c)(2). In addition to mandatory and discretionary conditions of probation supervision pursuant to 18 U.S.C. §3563(a) and (b), the Court may impose other conditions as part of a sentence as they relate to the nature and circumstances of the offenses and the history and characteristics of the Defendant.   18 U.S.C. §3553(a)(1). Probation conditions imposed as part of a sentence should also reflect the seriousness of the offense(s) and promote respect for the law while providing a just punishment for the offense(s), afford adequate deterrence to criminal conduct, protect the public from further crimes of the criminal actor, and provide the criminal actor with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. §3553(a)(2)(A),(B),(C),(D).

The Court may assess a maximum monetary Fine in the amount of $5,000.00 for each offense.  18 U.S.C. §3571(b)(6).

A special assessment of $10.00 is mandatory for each offense.

18 U.S.C. §3013(a)(1)(A)(ii).

Further, as a condition of probation, Mr. Dine may be required to make monetary payment of restitution pursuant to 18 U.S.C. §3663, to the extent agreed to by the parties in the plea agreement. 18 U.S.C. §3663(a)(3). *See* Plea Agreemn't (ECF Doc. 8 at pg. 6).

**Argument**

This is not a case that warrants a term of incarceration as suggested by the Government. This is not a case that warrants a term of home confinement.

According to the Statement of Offense (hereinafter referred to as SOF) which was filed with this Honorable Court on or about June 27, 2024, preceding Mr. Dine's plea of guilty, Dine's participation can be summarized by his attendance at the protest on January 6, 2021, located in and around the United States Capitol building. The Statement of Offense specifies that Dine was observed on closed circuit surveillance video in the Crypt of the Capitol, which is a restricted area and which was not open to the public on the date in question. Dine remained in the Crypt for a matter of minutes (less than twenty (20)).[1]

---

[1] The Government's sentencing memorandum concedes that based on a review of CCTV footage, it did not appear that Dine took part in any violence or destruction of property in the Capitol building, nor did he take part in any clashes with law enforcement. There is also no evidence that he advocated or encouraged anyone to engage in acts of violence or destruction of property. A fourteen (14) day term of confinement would be overly punitive. The Government, at times, has argued in other cases that incarceration or a period of home detention should be reserved for criminal actors that engaged in violent, assaultive, or damaging and harmful behavior during the riot. This case, and Defendant's conduct, lacks any indicia of destructive, harmful, or violent behavior.

It is undisputed that Dine took part in the protest at the United States Capitol on January 6, 2021. Dine agreed with the content of the Statement of Offense which was filed with the Court and which served as the basis for his pleas of guilty in the case. Dine does not dodge responsibility for his actions. He was fully cooperative with law enforcement officials from the beginning of their investigation up to and including its finality. Dine granted law enforcement immediate and open access to his social media accounts and all cellular mobile devices which he possessed and, or any other electronic device which he owned and which was requested by law enforcement. If a sentence in the case was based in part on the advisory United States Sentencing Guidelines (U.S.S.G.), Dine would be credited fully for timely acceptance of responsibility; his pleas of guilty were entered less than thirty (30) days after being charged. However, the United States Sentencing Guidelines (U.S.S.G.) do not apply and are not used to configure an appropriate sentence in the case given that the offenses are Class B misdemeanors. U.S.S.G. §1B1.9. Therefore, when sentencing a Defendant in a position identical or similar to Dine's in the current case, a District Court must consider all sentencing factors enumerated in 18 U.S.C. §3553(a). United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007).

## **Analysis**

### **18 U.S.C. §3553(a)**

In a case such as this, where United States Sentencing Guidelines (U.S.S.G.) do not apply and the Court considers sentencing factors listed in 18 U.S.C. §3553(a), the goal is to arrive at a punishment that is "sufficient, but not greater than necessary, to comply with the purposes set forth" by the factors enumerated in 18 U.S.C. §3553(a). This is the provision that serves as "the guidepost for sentencing decisions post United States v. Booker." See, United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006).

### **18 U.S.C. §3553(a)(1)**

Pursuant to 18 U.S.C. §3553(a)(1), the Court is directed to consider as part of its sentencing analysis "the nature and circumstances of the offense(s) and the history and characteristics of the defendant."

*Nature and Circumstances of the Offense*

As stated earlier, Dine entered a timely plea of guilty to Count Four (IV) and Count Three (III) of the Information filed against him by the Government. *See* Information (ECF Doc. 1). Count Four (IV) charged the offense of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. §5104(e)(2)(G), and Count Three (III) charged the offense of

6

Disorderly Conduct in the Capitol Building in violation of Title 40 of the United States Code, Section 5104(e)(2)(D). Pursuant to the plea agreement negotiated with the Government and communicated to Defendant, the Government would dismiss Count One (I) and Count Two (II) of the Information. Count One (I) charged the offense of Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. §1752(a)(1). Count Two (II) charged the offense of Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. §1752(a)(2).

It cannot be understated that the events which took place at the United States Capitol on January 6, 2021, were despicable acts of violence and served to undermine the electoral process--a fundamental bedrock of democracy--a principle on which the United States of America was founded. Some of the acts which took place during the riot at the United States Capitol on January 6, 2021, led to serious injury or death to others. The United States Capitol Police and other law enforcement agencies valiantly defended one of this nation's most sacred buildings against an attack which was made even more abhorrent given that it was undertaken by United States citizens or individuals residing within the country's borders.

From the outset, Mr. Dine was shocked that a political rally descended into a violent confrontation inside and on the front steps of the United States Capitol building. Dine witnessed

7

individuals force entry into the building and attempt to disrupt a normal and necessary function of Government performed by duly elected representatives.

It is important to note that Dine himself never took part in any act which would have caused intimidation, fear, or harm to anyone. He never engaged in conduct which was destructive in any form. Dine does not reject the fact that he was a person in the crowd that was not lawfully authorized to enter or remain in the Capitol building and, that prior to his entry, no members of the crowd submitted to security screenings or weapons checks by United States Capitol Police Officers or other security officials. *See* SOF, ¶s 6-9. In the moments of chaos, Dine followed along with other individuals that entered the building. Notably, Dine's entry into the building was peaceful through an exterior door that was open. At no time did he destroy or break any property or item within or without the Capitol building to gain entry or exit.

Dine did not travel to the Washington, D.C. area to take part in a protest that would include violence and destruction. On January 6, 2021, Dine entered the United States Capitol building and was observed on closed circuit surveillance video in the Crypt of the Capitol which was a restricted area. *See* SOF, ¶8. He remained in the Crypt for a few minutes. Several other unknown individuals were in the Crypt along with Dine. He stood near or sat on a bench on the outer perimeter of the Crypt for

approximately nine (9) minutes.  Government's Sentencing Memo (ECF Doc. 17 at pg. 5), *See* SOF, ¶8. This is the near totality of conduct in which Dine engaged.  Most notable is the absence of any act which could be deemed as destructive, harmful, assaultive, or violent. Defendant was shocked at what he was witnessing take place in the building. Dine has always held that he is and should be fully accountable for all acts in which he engaged and which were unlawful on that day. The opposite is also true.  He should not be held as culpable as individuals that committed acts of violence, assault, harm, and destruction.  It is simply not within his nature to commit any acts which would pose a harm or threat to anyone or anything.

It is important to put John Dine's own actions in full context.  That includes not only recognizing what Dine was observed by surveillance video and others to have done, but also understanding everything that transpired during the attack.  The events of that day were chaotic as they occurred in and around the building.  A crowd of enormous size gathered outside the building.  Temporary and permanent barricades were in place around the exterior of the Capitol building.  United States Capitol Police and various law enforcement were present and desperately attempting to keep the crowd away from the Capitol.  *See* SOF, ¶s 3-9.  The crowd, in a mass frenzy, advanced to the exterior facade of the building.  *See* SOF, ¶5.  Some in the crowd breached the barricades and

unlawfully entered the building.  Dine, acting in the moment, followed the unorganized crowd into the building.  Once in the building, Dine walked the right hallway for a short distance and remained for a few minutes inside the main Crypt.  Realizing that the event was spiraling into ugly disorder, he decided to immediately exit the building.  At no time did he come into direct contact with any members of the United States Capitol Police, lawmakers, or staffers that worked in the building.  In fact, his presence in the building was calm in that he was not screaming or attempting to create a disruption.  Dine did not go into any private office space or proceed to the well of the House or the Senate chambers.  Once Dine exited the building he left the demonstration area and eventually returned to St. Louis, Missouri. Dine cooperated with law enforcement once he was identified as an individual seen on surveillance footage inside the Capitol building.  Dine immediately took steps to communicate with law enforcement and provided them with any and all information which was requested of him.  He turned over his cellular telephone and all other digital electronic devices to law enforcement to help advance their investigation and prosecution of individuals associated with the riot.  Dine is not associated with any extremist groups and he was certainly not involved in planning any activity in which the crowd engaged.  Up to and including the very day that John Dine entered pleas of guilty to the charges he

remained cooperative with Federal investigators and the United States Attorney's Office in Washington, D.C.

There would be no justice in a sentence more harsh than probation without a term of incarceration or home detention for John Dine in this case.  The facts of the case do not support such an outcome--certainly not based on Dine's comparative role.  The attack on the Capitol should not have happened and Dine is not blameless.  Hundreds of individuals share responsibility for what occurred.  Some of those who are culpable may escape justice altogether while a few will have their wrists slapped.  Just because many other culpable individuals involved in this event may go uncharged and, or underpunished, does not serve as a legitimate reason to give Mr. Dine any greater sentence than that which is regarded as a just punishment by the United States Office of Probation in its Recommendation of Final Presentence Investigation Report (PSR).  *See* Sentencing Recommendation (ECF Doc. 15 at pg. 1).

*History and Characteristics of the Defendant*

John Matthew Dine found himself in the midst of an event the likes of which is unprecedented.  None of the rioters can be noted as using common sense and good judgment.  This applies to John Dine.  Dine would be the first to admit that he wishes he could take back his presence at the January 6, 2021, riot.  He holds a great deal of remorse and personal shame for putting himself in a

position where a much uglier result could have ensued. Dine quickly realized that the event was beginning to take a form with which he strongly disagreed. At that time, he exited the building.

To be confident of his personal disgust for the violence, one must know him. John Dine is a middle-aged man that was raised by loving, compassionate, and involved adoptive parents. He was taught by his parents to respect the rule of law. John Dine is valued as a friend, co-worker, family member, and human being deserving of high praise for his integrity, reliability, and willingness to serve as a positive role model for others. He works very hard to lead a productive life and be an asset for his employer and his community. Dine held a few different jobs including being a cook at a nursing home facility and being a caretaker for his adoptive father stricken with epilepsy before eventually becoming employed in the Quality Control Department for New Frontier Materials, Incorporated. *See* PSR, ¶s 56-59. Since April 2015, Dine has been employed in the Quality Control Department for New Frontier Materials, Incorporated. The company is a construction material supply company. *See* PSR, ¶57. It is easy to understand how Dine can serve as an asset to his employer. He is a bright, hardworking person. He is a valued member of his company and circle of peers. Dine is someone who possesses wonderful, desirable attributes--ones to be mirrored by others.

In describing Dine's personal and family background, it can be

stated that he was raised under modest economic circumstances. *See* PSR, ¶s 38,39. He has always cherished the time spent with his adoptive mother and father. Some of the greatest memories of his upbringing include simple moments which involved family dinners with his small family and spending time with loved ones like his grandmother that instilled in him positive virtues and values. The lessons he learned as a young man from his hardworking family will never be forgotten. While Dine is blessed to have had such loving and caring parents, he realizes that demonstrating the positive virtues that he was taught from an early age means that he must lead a life devoid of selfishness, closed mindedness and intolerance. Dine never once has been accused of being a violent or troublemaking individual. His criminal history is largely unremarkable notwithstanding a drug related arrest over twenty-seven (27) years ago which was dismissed. *See* PSR, ¶35. He does not engage in persistent or excessive alcohol use and does not use illicit controlled substances on a recreational basis or otherwise. *See* PSR, ¶s 50, 51.

## 18 U.S.C. §3553(a)(2)(A)(B)(C)&(D)

18 U.S.C. §3553(a)(2)(A) directs the Court to consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

The gravity of the events of January 6, 2021, cannot be diminished. The country suffered an indelible scar and the event revealed the larger problem of a potentially violent political rift among fellow countrymen. The division may be perhaps accurately described as a societal ill once it rose to the level of violence and destruction as seen on January 6, 2021. Mr. Dine only asks that the Court weigh the seriousness of *his* personal conduct on January 6, 2021, rather than that of the collective mob. A just punishment and reinforcement of the axiom that respect for the law is paramount would dictate that Dine be sentenced to a term of probation with no incarceration or condition of home confinement. Society and the rule of law demand that there are consequences for acts of lawlessness. However, respect for the law is never achieved by harsh or draconian measures. The United States Supreme Court has warned that excessive sentences "may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." Gall v. United States, 553 U.S. 38, 54 (2007). This is precisely the reasoning behind 18 U.S.C. §3553(a)'s primary rule of thumb; that a sentence be sufficient, but not greater than necessary, to achieve these aims. Arguably, to sentence Defendant to jail or a term of home confinement, no matter how brief a period, would only serve to create hardship for Defendant, his family, and his

employer.    The Government's suggestion that he serve a fourteen (14) day term of incarceration is excessive and inappropriate in this case.   Such a sentence would jeopardize his employment and ability to contribute to his family and earn a living.   Such a sentence would disregard the real conduct and circumstances involved in his situation.  Dine has several characteristics in his life that exhibit stability.  Such characteristics are his form of employment, his familial relationships, and his financial position. The Government broadly argues that despite this stability, Dine engaged in a breach of the United States Capitol.   Therefore, the Government holds the opinion that Dine should serve a fourteen (14) day period of incarceration on Count Three (III) and lengthier period of probation (three (3) year term of supervised probation) on Count Four (IV).   The Government does not adequately consider that a sentence of incarceration would serve to weaken the stability in Defendant's life.  If Dine is sentenced to a term of jail or home confinement and loses his job, his employment stability is significantly weakened.   If Dine is sentenced to a period of jail or home detention and is unable to provide for his family, his financial stability is weakened.  If Dine is unable to assist his wife and other family members with household duties because he is sentenced to jail or home confinement, his familial stability is weakened.  The Government's position is shortsighted and may lead to consequences intended to be avoided altogether.

18 U.S.C. §3553(a)(2)(B) and (C) addresses the need for a sentence to "afford adequate deterrence to criminal conduct...[and]...to protect the public from further crimes of the defendant."

Specific deterrence and the need to protect the public from further crimes committed by Defendant are not great concerns in this case.  Dine is not a man who spent his life on the wrong side of the law.  Dine is unlikely to be involved in any future criminality.  He has an occupation which is respected and requires an individual to exhibit good judgment.  John Dine poses no danger to the public.  To the contrary, those that know him paint him as a supportive individual, someone who is quick to learn from mistakes, lend a helpful hand, and one that makes it a point to be kind and compassionate to others.

The larger issue is general deterrence.  This case has been one of many impactful to the belief that political disagreements should not rise to the level of mob violence.  It highlights the deep division between those with differing political loyalties.  To most people that were involved and that are unaccustomed to breaking the law, the idea of being prosecuted and going to jail is terrifying.  Dine is one of these individuals.  John Dine engaged in no disruptive, harmful, assaultive, or outrageous conduct by the Government's own admission.  The fact that he faces criminal prosecution with potential for a significant penalty to be imposed,

raises concerns on many different levels.  Dine is *not* asking the Court to spare him any consequences for his conduct.  Rather, a sentence limited to payment of restitution and a term of probation with no period of jail or home confinement would achieve absolute deterrence in his case.  This belief is shared by the United States Office of Probation.  The recommendation of the Final Presentence Investigation Report (PSR) concludes "The recommended sentence takes into account the extent of the defendant's personal conduct, his compliance with pretrial supervision, and his limited criminal record."  *See* Sentencing Recommendation (ECF Doc. 15 at pg. 2). Any other sentence would be greater than necessary to achieve sufficient deterrence based on Dine's actions.

18 U.S.C. §3553(a)(2)(D) addresses education and vocational training, medical care, and other correctional treatments.

The Federal Bureau of Prisons and United States Office of Probation deserve endless praise for their extensive programming to help individuals in vocational pursuits and obtain adequate medical care or address controlled substance abuse issues.  Some offenders who never learned a legitimate trade can find one during incarceration or probation supervision.  Educational and vocational training programs exist because of a recognition that the ability to find gainful employment is a substantial stride towards rehabilitation once an individual is released from confinement or probation.

John Dine already possesses skills that promote value to society.  His credentials as a quality control inspector coupled with his specific performances as an inspector allow him to be a productive citizen in society.  The Court is asked to please consider this in arriving at a sentence which would only include a term of probation excluding incarceration or home detention and in reasoning that such a sentence would be no greater than necessary to meet the ends of justice.

## 18 U.S.C. §3553(a)(6)

The Court is directed to consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct in determining a particular sentence to be imposed.  *See* 18 U.S.C §3553(a)(6).  The task of avoiding unwarranted sentence disparities among defendants in the case at hand is assisted by reviewing some specific examples of sentences imposed by the Court against defendants that have pled guilty to violating 40 U.S.C. §5104(e)(2)(D),(G).  These are the same sections of the United States Code Dine pled guilty to violating.  The District Court has already begun to make meaningful distinctions between offenders.  The Government acknowledges in its memorandum that "every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender."  *See* Government Sentencing

Memorandum (ECF Doc. 17 at pg. 17).  *Cf.*  <u>United States v.
Gardellini</u>, 545 F.3d 1089, 1093 (D.C. Cir. 2008).

To illustrate that a sentence comprised of a minimal term of
probation and no incarceration or home detention is appropriate in
this case, a small sample of offense facts and resultant sentences
pertaining to other individuals involved in the January 6th riot is
set forth below.

First, is the case against Jessica Louise Bustle.[2] Similar to
Mr. Dine, Ms. Bustle entered the Capitol building and remained for
approximately twenty (20) minutes.  Ms. Bustle, like Dine, did not
have permission to be in the building and was there for the purpose
of protesting what she thought to be a stolen election. However,
what is strikingly dissimilar from Dine's conduct is that Ms.
Bustle both during the midst of the riot and immediately thereafter
posted several derogatory and inciteful messages on her social
media Facebook account.  Some of the posts read in part "Pence is
a traitor.  We stormed the Capital [sic].  An unarmed peaceful
woman down the hall from us was shot in the neck by cops.  It's
insane here."  Further, Bustle posts a message which reads "We need
a revolution!"  Obviously, Bustle was attempting to rally rioters
and create an atmosphere of resistance.  In the case at hand, Dine
never once made an effort to incite individuals or advance the
progress of the riot. The sentencing Court in Bustle's case decided

---

[2] United States of America v. Jessica Louise Bustle, 1:21CR00238 (TFH).

on a period of sixty (60) days of home confinement and twenty-four (24) months of supervised probation along with forty (40) hours of community service and restitution in the amount of $500.00.

Second, is the case involving Valerie Ehrke.[3] Ms. Ehrke entered the United States Capitol building with a large crowd. She entered one of the hallways of the building and took a video from a first person perspective while she was there. She uploaded her video to her social media Facebook account with a caption reading "We made it inside, right before they shoved us all out. I took off when I felt pepper spray in my throat! Lol." It is obvious that Ehrke was in an area of the Capitol where chemical pepper spray was being disbursed by Capitol Police officers. Ehrke describes being shoved from one of the hallways of the Capitol building. She left the building only when an unknown individual grabbed her and pushed her outside. This does not comport with someone voluntarily leaving the building.

In Ehrke's case, the Government did not seek any period of jail, home detention nor did it seek a prolonged period of probation. The sentencing Court imposed a thirty-six (36) month term of probation and ordered that she pay $500.00 in monetary restitution. Dine's conduct was not as egregious. However, the Government inexplicably feels it is appropriate to seek incarceration and a long period of probation in Dine's case. Dine

---

[3] United States of America v. Valerie Ehrke, 1:21-CR-00097 (PFF).

was never in an immediate area where chemical pepper spray was being disbursed.  Dine was never "grabbed" or "shoved" and made to leave the building.  The opposite is true.  Dine immediately left the building once events looked as if they may turn dangerous.

Third, a comparison of Dine's case with that of the case filed against Anna Morgan-Lloyd is insightful.[4]  Ms. Morgan-Lloyd entered the Capitol building on January 6, 2021, with a female companion. She participated in the protest in and around the United States Capitol building.  In what can be termed standard protocol among some rioters, Ms. Morgan-Lloyd posted messages to her social media Facebook account that included photos.  In one message, she wrote "I am here.  Best day ever.  We stormed the Capitol building me and (omitted) were in the first 50 people in."  Later in more social media messaging, Morgan-Lloyd  wrote "that was the most exciting day of my life."  She further relayed "I am so glad we were there. For the experience and memory but most of all we can spread the truth about what happened and open the eyes of some of our friends."  Morgan-Lloyd also took photographs which were uploaded to her social media accounts depicting her standing next to other rioters with stolen and broken property taken from within the Capitol building.

Again, it is evident Defendant, Morgan-Lloyd's, conduct during the January 6, 2021, riot and even afterwards, was far more

[4] United States of America v. Anna Morgan-Lloyd, 1:21-CR-00164 (RCL).

appalling than that of Dine's.  Ms. Morgan-Lloyd held the position that the actions of rioters should be rejoiced.  Distastefully, Morgan-Lloyd was thrilled to take part in the riot likening it to one of the most exciting days of her life.  By comparison, Dine never considered the riot a righteous event.

Nonetheless, the Government did not argue for a period of incarceration or home detention or even a prolonged period of probation supervision in Morgan-Lloyd's case.  The sentencing Court imposed a thirty-six (36) month term of probation as a sentence along with requirements that she complete 120 hours of community service and pay $500.00 in monetary restitution.

In sum, Dine did not engage in or encourage any violence or destruction of property.  He remained inside the Capitol building for only a brief period of time.  He was cooperative from beginning to end with law enforcement following his identification and arrest.  He took responsibility for his actions by pleading guilty at the first opportunity that was presented to him (less than thirty (30) days after being charged).  He showed no reluctance to provide the Government with information and evidence which could have been used to advance criminal prosecutions against other individuals present at the riot.  John Dine will continue to harbor shame and remorse for his part in what transpired on January 6, 2021.  All of these facts must be taken into account.  The goal of minimizing unwarranted sentencing disparities prescribed by 18

U.S.C. §3553(a)(6) is "only one of several factors that must be weighed and balanced...and the degree of weight is firmly committed to the discretion of the sentencing Judge." United States v. Coppola, 671 F.3d 220, 254 (2d Cir. 2012). In this case, it would be just for the Court to sentence Defendant to minimal terms of concurrent supervised probation. It would be unjust for the Court to impose a term of incarceration or home confinement given the disparity that would be created by doing so between his conduct and that of some as mentioned above who were spared any incarceration or home confinement punishment.

## 18 U.S.C. §3553(a)(7)

The last factor under 18 U.S.C. §3553 to be considered is listed in §3553(a)(7). The factor addresses restitution. The Government recommended a restitution figure in the amount of $500.00. *See* PSR, ¶s 9,88; Plea Agreemn't (ECF Doc. 8 at pg. 6). Pursuant to 18 U.S.C. §3663(a)(1)(A), "the Court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." Defendant does not contest the Government's efforts to seek restitution nor does he contest the monetary amount ($500.00). Dine plans to make restitution in the amount ordered without delay to the victim (Architect of the Capitol, Office of Chief Financial Officer) as named in the plea agreement. *See* Plea Agreemn't (ECF Doc. 8 at pg. 6).

## Conclusion

**WHEREFORE,** Defendant, John Matthew Dine, by his attorney, respectfully asks the Court to sentence Defendant to minimal concurrent terms of probation on each count with mandatory and, or discretionary conditions deemed appropriate.  Such an outcome will send a message in this case and deliver a real and significant punishment to Defendant.  At the same time, it will allow him to continue the upward and stable trajectory of his life and remain a productive asset to his family, friends, co-workers, and society in general.

Respectfully Submitted,

**ETHAN B. CORLIJA**
**ATTORNEY AT LAW**


_/s/ Ethan B. Corlija_
Ethan B. Corlija
Bar Number: MO0020
5205 Hampton Avenue
St. Louis, Missouri 63109
Telephone: 314-832-9600
Facsimile: 314-353-0181
E-Mail: ecorlija@sbcglobal.net

**ATTORNEY FOR DEFENDANT**


## CERTIFICATE OF SERVICE

I, Ethan B. Corlija, legal counsel for Defendant herein, **JOHN M. DINE**, certify that a true and accurate copy of the forgoing Defendant's Response to Government's Sentencing Memorandum has been forwarded to counsel of record for the United States of America at the following address: Mr. Patrick Holvey, Assistant United States Attorney, United States Attorney's Office for the District of Columbia, 601 D Street Northwest, Washington, District of Columbia 20530, this 23rd day of October 2024.


_/s/ Ethan B. Corlija_